# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of June, 2024** are as follows:

**PER CURIAM:**

*2024-B-00248*     *IN RE: ADAM GRANVILLE YOUNG*

SUSPENSION IMPOSED. SEE PER CURIAM.

Weimer, C.J., concurs in part, and dissents in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2024-B-0248

IN RE: ADAM GRANVILLE YOUNG

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Adam G. Young, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

Beginning in 2010, respondent represented his cousin, Donald Domingue, in several legal matters. During the representation, Mr. Domingue offered respondent office space and financial support to develop his law practice. Respondent accepted the offer and financing from Mr. Domingue, and allegedly indicated that he would commit a certain portion of the net profits from his law practice toward repaying Mr. Domingue. On January 15, 2012, respondent executed a promissory note in favor of Mr. Domingue in the amount of $500,000. On February 16, 2012, after Mr. Domingue paid off respondent's student loans, respondent executed a promissory note in favor of Mr. Domingue in the amount of $151,675.61.[1] Respondent did not advise Mr. Domingue to seek independent legal counsel in these transactions.

---

[1] On January 5, 2015, respondent executed another promissory note in favor of Mr. Domingue in the amount of $151,675.61. According to the recitations in the 2015 promissory note, it had come to the attention of respondent and Mr. Domingue that "the 2012 Note was silent as to the amount of interest that the debt would accrue," and so respondent executed the 2015 promissory note "to revoke and replace the 2012 Note and to set forth retroactive interest bearing at the same rate as the student loan debt…"

Respondent repaid approximately $18,000 to Mr. Domingue.  Thereafter, he was unable to make monthly payments on the debt, and Mr. Domingue demanded all of the funds owed to him.  Respondent terminated his representation of Mr. Domingue in 2014, and various litigation ensued.  Respondent filed a declaratory judgment action against Mr. Domingue, seeking a determination of the amount he owed Mr. Domingue.  Mr. Domingue sued respondent for legal malpractice and on the promissory notes.  Respondent then filed a reconventional demand against Mr. Domingue seeking damages for extortion and harassment as well as for unfair trade practices.  These lawsuits were later consolidated.

In 2020, respondent filed for Chapter 11 bankruptcy protection.  Mr. Domingue filed a proof of claim in the bankruptcy, to which respondent objected.  The issues between respondent and Mr. Domingue, including the state litigation, were set to be tried in the bankruptcy case as an adversarial proceeding, but the parties settled the matter in 2021.  Under the settlement, respondent's five-year Chapter 11 Plan was confirmed and he agreed to an order allowing Mr. Domingue's claim of $541,910.41.  Of this amount, $350,000 is nondischargeable, and any proceeds paid to Mr. Domingue through the Chapter 11 Plan are first credited to the dischargeable portion.  As to any amount not subject to discharge and remaining unpaid after termination of the Chapter 11 Plan, respondent is required to pay this sum to Mr. Domingue in sixty equal monthly installments beginning the first month after termination of the Plan.  To date, respondent has made no payments to Mr. Domingue.[2]

---

[2] Since 2021, respondent has made some payments to the IRS and the Louisiana Department of Revenue as priority creditors, but he has made no payments to his unsecured creditor, Mr. Domingue.

**DISCIPLINARY PROCEEDINGS**

In September 2019, the ODC filed formal charges against respondent, alleging that he entered into an improper business transaction with a client, improperly shared legal fees with a non-lawyer, and engaged in conduct prejudicial to the administration of justice, in violation of Rules 1.8(a), 5.4(a), 8.4(a), and 8.4(d) of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.

In November 2019, respondent filed a motion to stay this proceeding pursuant to Supreme Court Rule XIX, § 18(G).[3] The ODC opposed the motion. The hearing committee chair granted the motion to stay in December 2019. The stay remained in effect until May 2021, when the matter was set for hearing pursuant to an unopposed motion filed by the ODC.

*Formal Hearing*

The hearing committee conducted the formal hearing on October 20, 2021 and December 21, 2022. Both parties introduced documentary evidence at the hearing. The following witnesses testified: respondent, Mr. Domingue, Bradley Drell, Patrick Cornelius Cotter, and Russell Kahn.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made findings of fact, including the following:

Respondent and Mr. Domingue are first cousins, once removed. They were socially close. In 2009 and 2010, Mr. Domingue was a stockbroker and financial advisor with an office in Abbeville; respondent, having been admitted to the bar in

---

[3] Supreme Court Rule XIX, § 18(G) provides that a disciplinary matter may be stayed "because of substantial similarity to the material allegations of pending criminal or civil litigation…"

2005, was beginning his law practice in New Orleans. Mr. Domingue wanted to help respondent grow his practice and offered to let him use an office in his business suite in Abbeville as his law office. Respondent accepted this offer. Mr. Domingue also provided respondent with cash advances and access to a credit card for the operation of his law practice, and he paid off respondent's student loans. Both Mr. Domingue and respondent understood that these transactions were loans that respondent would have to repay.[4]

An attorney-client relationship between respondent and Mr. Domingue began on December 13, 2010, when respondent agreed to represent Mr. Domingue in a defamation action against Mr. Domingue's ex-wife. By the time Mr. Domingue became respondent's client, Mr. Domingue had already begun to loan respondent money. The great majority of the loan transactions occurred after respondent had established an attorney-client relationship with Mr. Domingue. Respondent was providing his legal services to Mr. Domingue free of charge. The attorney-client relationship continued until May 2014.

The precise amount of funds Mr. Domingue loaned to respondent is unknown, but respondent executed three different promissory notes in favor of Mr. Domingue, in the amounts of $500,000, $151,675.61 and $151,675.61. Respondent testified that at the time he executed the $500,000 promissory note, he owed Mr. Domingue approximately $250,000, but the promissory note recited the higher amount so that Mr. Domingue could obtain a $500,000 life insurance policy on respondent to protect his investment.

On July 17, 2020, respondent filed for Chapter 11 bankruptcy. Mr. Domingue filed a proof of claim in the bankruptcy proceeding amounting to $1,110,753.10. Later, Mr. Domingue and respondent entered into a stipulation wherein respondent

---

[4] The committee did not find respondent to be credible when he testified that Mr. Domingue gave him money initially but "didn't expect to get it back."

agreed that Mr. Domingue would be allowed a general unsecured claim in the bankruptcy case in the amount of $541,910.41 and that $350,000 of said claim would not be discharged and would survive the completion of the Chapter 11 Plan unless paid under the Plan. This stipulation left the sum of $191,910.41 as potentially dischargeable. As of December 21, 2022, respondent had not made any payments to Mr. Domingue under the Chapter 11 Plan.

At some point, Mr. Domingue asked respondent to begin to repay the loans, but respondent had trouble doing so. Respondent offered to enter into a payment arrangement whereby a percentage of his net profits would be paid to Mr. Domingue. However, respondent was careful to inform Mr. Domingue that "I cannot provide you with a contract that gives you an ownership interest [in my law firm], cannot form a partnership with you, and cannot share fees in order to repay you for financing my firm. … In keeping with our many discussions, I intend to make a proposal where the repayment obligation will vary each year based on my gross income that year." Respondent testified that he offered to pay Mr. Domingue a percentage of his entire income, not to share legal fees with Mr. Domingue. Given the email exchanges between respondent and Mr. Domingue, the committee found this testimony credible.[5]

After respondent terminated the attorney-client relationship with Mr. Domingue, they began litigating against one another in a civil action. Respondent filed claims against Mr. Domingue for extortion and unfair trade practices. The civil action was settled in conjunction with the bankruptcy proceeding.

Based on these facts, the committee determined that respondent violated Rules 1.8(a) and 8.4(a) of the Rules of Professional Conduct by entering into an improper business relationship with a client. Respondent never advised Mr. Domingue in

---

[5] The agreed upon repayment plan was never formalized in writing, although email discussions between Mr. Domingue and respondent negotiating the payment plan were admitted into evidence.

writing that he should seek independent legal counsel and never obtained Mr. Domingue's informed written consent to the loan transactions or proposed repayment plans. The committee found that respondent did not share (or attempt to share) legal fees with a non-lawyer, in violation of Rule 5.4(a), or engage in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).

The committee determined respondent violated duties owed to his client. He acted knowingly and caused actual injury to Mr. Domingue. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension.

The committee determined that the following mitigating factors are present: absence of a prior disciplinary record and inexperience in the practice of law. The committee determined that no aggravating factors are present.

Based on these findings, the committee recommended respondent be suspended for one year and one day, with all but ninety days deferred. The committee also recommended that respondent be required to make restitution to Mr. Domingue "as per the bankruptcy plan and stipulations entered into between them," and that respondent be assessed with the costs and expenses of this proceeding.

The ODC filed an objection to the hearing committee's report.


*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same. Based on these factual findings, the board determined respondent's conduct violated the Rules of Professional Conduct as found by the committee.

The board agreed that respondent violated duties owed to his client. His actions were knowing and caused actual injury to Mr. Domingue, represented by the large debt respondent owes to Mr. Domingue. Based on the ABA's *Standards for*

*Imposing Lawyer Sanctions*, the board determined the baseline sanction is suspension.

The board determined that the following mitigating factors are present: absence of a prior disciplinary record and inexperience in the practice of law. The board determined that the only aggravating factor present is a pattern of misconduct.

Considering these findings, the court's prior jurisprudence discussing similar misconduct, and the totality of respondent's misconduct, a majority of the board concluded that the sanction recommended by the committee is reasonable. Accordingly, the board majority recommended that respondent be suspended from the practice of law for one year and one day, with all but ninety days deferred. The board further recommended that respondent be required to make restitution to Mr. Domingue in the amount of $541,910.41 and that he be assessed with the costs and expenses of this matter.

One board member dissented and would recommend that no portion of the recommended one year and one day suspension be deferred.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re:*

*Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record establishes by clear and convincing evidence that respondent entered into an improper business transaction with a client. This conduct violated Rules 1.8(a) and 8.4(a) of the Rules of Professional Conduct.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to his client. His actions were knowing and caused actual injury to Mr. Domingue. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the applicable baseline sanction is suspension. The aggravating and mitigating factors found by the disciplinary board are supported by the record.

Both the hearing committee and the board found that the appropriate sanction for respondent's misconduct is a one year and one day suspension, with all but ninety days deferred. Neither party has objected to this sanction, and so it is imposed, along with a two-year period of probation. During the probationary period, respondent must make good faith efforts to repay Mr. Domingue pursuant to the terms of the Chapter 11 Plan, and provide quarterly reports to the ODC concerning his efforts in this regard. At the conclusion of the probationary period, the ODC may file a motion to extend probation if it feels there is a continued need for supervision, or the parties

can consent to renewing probation for an additional two-year term pursuant to Supreme Court Rule XIX, § 10(A)(3).

## DECREE

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Adam Granville Young, Louisiana Bar Roll number 30124, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but ninety days of this suspension shall be deferred. Following the completion of the active portion of his suspension, respondent shall be placed on probation for a period of two years, governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter of this disciplinary proceeding are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**No. 2024-B-0248**

**IN RE: ADAM GRANVILLE YOUNG**

**ATTORNEY DISCIPLINARY PROCEEDING**

**WEIMER, C.J., concurring in part, and dissenting in part:**

After the Respondent's bankruptcy proceedings, he agreed to reimburse the full sum in restitution. When a civil obligation has been discharged in bankruptcy, a natural obligation remains. La. C.C. art. 1762(1). By subsequently agreeing to the pay the full amount to the complainant, the Respondent was again bound to fulfill that obligation. See La. C.C. art. 1761. ("A contract made for the performance of a natural obligation is onerous."). Because the agreement to pay full restitution occurred after bankruptcy, the disciplinary board is correct in its assessment of the amount of restitution.